UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
OLD REPUBLIC INSURANCE COMPANY, )
                               )
          Plaintiff,           )
                               )
     v.                        )    C.A. No. 23-491 WES
                               )
IHI POWER SERVICES CORP.,      )
                               )
          Defendant,           )
          Counterclaimant, and )
          Third-Party Plaintiff,)
                               )
     v.                        )
                               )
NORTH AMERICAN SPECIALTY       )
INSURANCE,                     )
                               )
          Third-Party Defendant. )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, District Judge.

This action stems from another lawsuit filed in this Court, <u>Walker v. IHI Power Services Corp.</u>, No. 1:23-cv-00057 WES (D.R.I.) (the "<u>Walker</u> Litigation"). The plaintiff there, Christopher Walker, alleges that IHI Power Services Corp. ("IHI") - the Defendant, Counterclaimant, and Third-Party Plaintiff here - injured him because it negligently managed, operated, and

maintained the Manchester Street Power Station ("MSPS").[1]   IHI contracted with Mass. Electric Construction Co. ("MECC") – Walker's employer – for electrical shop support services for the MSPS.[2]  The agreement between MECC and IHI included an indemnity provision, as well as a provision requiring IHI be added as an additional insured.[3]   Plaintiff Old Republic Insurance Company ("Old Republic") and Third-Party Defendant Swiss Re Corporate Solutions America Insurance Corp. f/k/a North American Specialty Insurance Company ("SRCS America") issued the relevant insurance policies.[4]

Old Republic seeks a declaration that it has no duty to defend or indemnify IHI in the Walker Litigation.[5]   IHI responded by asserting counterclaims against Old Republic and filing a third-party complaint against SRCS America seeking, among other things, a declaration that Old Republic owes IHI a duty to defend and that

---

[1] Complaint (hereinafter "Walker Complaint"), Walker v. IHI Power Services Corp, et al., No. 1:23-cv-00057 WES (D.R.I. Feb. 7, 2023) ¶¶ 14-16, 21-24, 27-48, ECF No. 1.

[2] IHI Statement of Undisputed Facts ("DSUF") ¶ 7, ECF No. 29; Old Republic Ins. Co.'s and Swiss RE Corporate Sols. Am. Ins. Corp.'s Statement of Disputed Facts ("PSDF") ¶ 7, ECF No. 35; see DX4, P.O. MPO2398 Terms and Conditions (Feb. 10, 2022) ("Terms and Conditions") 1, ECF No. 28-5.

[3] Terms and Conditions at 3-4; see DSUF ¶ 10.

[4] DSUF ¶¶ 5-6.

[5] Am. Compl. Declaratory J. ¶¶ 21-27, ECF No. 4.

both parties owe it a duty to indemnify in the Walker Litigation.[6] After a brief discovery period, IHI moves for partial summary judgment on its declaratory relief claims against Old Republic and SRCS America.[7]  For the reasons below, the Court denies IHI's Motion.

## I.  BACKGROUND[8]

### A. Insurance Policies

IHI manages and operates the MSPS in Providence, Rhode Island. IHI Statement Undisputed Facts ("DSUF") ¶ 7, ECF No. 29; Old Republic and SRCS America Statement of Undisputed Facts ("PSUF") ¶ 25, ECF No. 36.[9]  IHI bought MECC's electrical shop services.[10]

---

[6] IHI Answer Am. Compl. Declaratory J., Countercl., & Third-Party Compl. 7-8, ECF No. 7.

[7] See generally IHI Mot. Partial Summ. J., ECF No. 28.

[8] These facts are undisputed unless otherwise noted.  The Court views any disputed facts in a light most favorable to Old Republic and SRCS America as the non-moving parties.  See Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 92 (1st Cir. 2021).

[9] IHI did not file a statement of disputed facts as required by the local rules.  See L.R. Civ. 56(a).  Accordingly, the Court accepts Old Republic's and SRCS America's Statement of Undisputed Facts, ECF No. 36, as true.  See Smith v. United Parcel Serv., Inc., C.A. No. 19-192 WES, 2020 WL 5517571, at *4 n.3 (D.R.I. Sept. 14, 2020).

[10] IHI asserts that it contracted with MECC for its services. DSUF ¶ 7.  Old Republic and SRCS America contend that MECC executed a Purchase Order Terms and Conditions that governed the "purchase and sale of the goods or services identified on the Purchase Order to which they are attached or incorporated."  PSDF at 1 (quoting Terms and Conditions at 2); see Old Republic & SRCS America Statement of Undisputed Facts ("PSUF") ¶ 27, ECF No. 36.  Then,

The Terms and Conditions of their contract includes a section on indemnity and one on insurance.  The former states:

> **INDEMNITY:** [MECC] shall defend and indemnify [IHI], . . . from and against any and all claims, actions, liabilities, damages, losses, costs, and expenses . . . provided that such Claims are attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property caused by either (i) the violation of or failure to comply with any law or regulation, or (ii) breach, misconduct, or negligence of [MECC] [or] [MECC's] Personnel. . . . In the event that any Claims are caused by joint or concurrent gross negligence of [MECC] or [MECC's] Personnel and [IHI], the Claims shall be borne by [MECC] and [IHI] to the extent of each Party's respective degree of negligence and in no event shall a party have liability or obligation with respect to the acts or omissions of the other party.

DX4, P.O. MPO2398 Purchase Order Terms and Conditions (Feb. 10, 2022) ("Terms and Conditions") 3-4, ECF No. 28-5; see PSUF ¶ 29.

The latter states:

> **INSURANCE:** [MECC] shall maintain insurance with minimum limits as follows: . . . (b) commercial general liability insurance with a limit of $1,000,000 per occurrence and $2,000,000 in the aggregate. . . . [IHI] Indemnitees shall be additional insured on a primary and noncontributory basis with respect to all [MECC] liability policies for on-going and completed operations. All [MECC] insurance policies shall include a waiver of subrogation in favor of [IHI] Indemnitees. . . . In no event will [MECC]'s obligation to maintain insurance limit or diminish [MECC]'s obligations or liability to [IHI].

Terms and Conditions at 4; see DSUF ¶ 8; PSUF ¶ 30.  Old Republic

---

IHI issued Purchase Order MPO2398, which specifies that MECC would "provide electrical shop support."  PSDF at 1 (quoting PXB, P.O. MPO2398 (Apr. 25, 2022) 1, ECF No. 28-3); see PSUF ¶ 37.

issued Commercial General Liability insurance to Peter Kiewit
Sons, Inc. ("Peter Kiewit"), MECC's parent company.  DSUF ¶ 5;
PSUF ¶ 32-33; see DX2, Old Republic Policy (Mar. 1, 2022-Mar. 1,
2023), ECF No. 28-3.  Old Republic identified MECC as a Named
Insured under a Broad Form Named Insured Endorsement.  PSUF ¶ 32;
Old Republic Policy at 15.  SRCS America issued a Form Commercial
Excess Liability Policy to Peter Kiewit.  DSUF ¶ 6; PSUF ¶ 34; see
DX3, SRCS Policy (Mar. 1, 2022-Mar. 1, 2023), ECF No. 28-4.

Old Republic's policy contained two endorsements.  The first
endorsement, "Additional Insured – Owners, Lessees or Contractors
– Automatic Status for Other Parties when Required in Written
Construction Agreement" ("Endorsement A"), states in relevant
part:

> **Section II – Who Is An Insured** is amended to include as
> an additional insured:
>
> 1. Any person or organization for whom you are performing
> operations when you and such person or organization have
> agreed in writing in a contract or agreement that such
> person or organization be added as an additional insured
> on your policy; and
>
> 2. Any other person or organization you are required to
> add as an additional insured under the contract or
> agreement described in Paragraph 1. above.
>
> Such person(s) or organization(s) is an additional
> insured only with respect to liability for "bodily
> injury", "property damage" or "personal and advertising
> injury" caused, in whole or in part, by:
>
> a. Your acts or omissions; or
>
> b. The acts or omissions of those acting on your behalf;
> in the performance of your ongoing operations for the

5

> additional insured described in Paragraph 1. or 2. above.
>
> However, the insurance afforded to such additional insured described above:
>
> a. Only applies to the extent permitted by law; and
>
> b. Will not be broader than that which you are required by the contract or agreement to provide such additional insured.
>
> [. . .]
>
> This endorsement shall not increase the applicable limits of insurance.

DX8, Endorsement A 1-2, ECF No. 28-9; see DSUF ¶¶ 14-15. The other relevant endorsement, entitled "Additional Insured – Owners, Lessees, or Contractors – Scheduled Person or Organization" ("Endorsement B"), covers,

> Any person or organization whom you are required in a written contract or written agreement to add as an additional insured on this policy and for whom no other endorsement on this policy provides insured status.

DX9, Endorsement B, ECF No. 28-10; see DSUF ¶¶ 16-17. Endorsement B then outlines,

> **Section II – Who is an Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Endorsement B.

## B. The <u>Walker</u> Litigation

Walker received an electric shock while working on the MSPS and suffered severe injuries. PSUF ¶¶ 52-53; <u>Walker</u> Compl. ¶¶ 15-26. At the time of the incident, Walker was an employee of MECC

6

and was injured in the course of his employment.  DSUF ¶ 10.  The electric shock occurred in the Unit 10 turbine generator.  PSUF ¶ 55.

Walker sued IHI alleging that its negligence in managing, operating, and maintaining MSPS caused his injuries.  <u>Walker</u> Compl. ¶¶ 21-24, 27-48.  The <u>Walker</u> Complaint does not make any allegations towards MECC.  <u>See generally</u> <u>id.</u>  IHI admits in its Answer to the <u>Walker</u> Complaint that:

> (i) IHI was responsible for the management, operation, and maintenance of MSPS; (ii) IHI was required to utilize reasonable safety precautions to assure the safety of [all] persons working at MSPS; (iii) IHI had ultimate control and authority over MSPS; (iv) IHI was responsible for performing the appropriate grounding prior to any electrical work on the Unit 10 steam turbine generator at MSPS; and (v) IHI's employees incorrectly set the grounding on the Unit 10 steam turbine generator at [MSPS].

PSUF ¶ 55 (citing Answer of IHI to Pl.'s Compl. ("IHI Answer") ¶¶ 2, 7-10, 13, 19, <u>Walker v. IHI Power Servs. Corp.</u>, No. 23-cv-00057 WES (D.R.I. Feb. 21, 2023), ECF No. 5).  As an affirmative defense, IHI asserts that Walker's injuries resulted from his own negligence.  IHI Answer 6; <u>see</u> DSUF ¶ 11.  It also alleges in its Amended Third-Party Complaint that MECC was at fault for insufficiently training Walker.  Am. Third-Party Compl. ("IHI TPC") ¶¶ 9-25, <u>Walker v. IHI Power Servs. Corp.</u>, No. 1:23-cv-00057 WES (D.R.I. Jan. 9, 2024), ECF No. 29.

After Walker filed his lawsuit, IHI demanded a defense and

indemnification as an additional insured under Peter Kiewit's insurance policy with Old Republic. DSUF ¶ 19. A week later, Old Republic issued a letter rejecting IHI's tender, reasoning that it is not owed coverage because Walker alleges that IHI's negligence caused his injuries, rather than the actions or omissions of MECC, which Old Republic asserts is required for coverage under the additional insured policy. Id. ¶¶ 20-21; see DX11, Amundson Ltr. (July 10, 2023), ECF No. 28-12. In response, IHI issued a second demand letter, DSUF ¶ 22, which Old Republic rejected for the reasons stated in its first letter but also elaborated that it based its decision on its own investigation, id. ¶¶ 23-24; see DX13, Bengtson Ltr. (Nov. 9, 2023), ECF No. 28-14.

### C. Post-Incident Investigation

To understand how Walker sustained his injuries, some background is necessary. Before the incident, IHI requested five days of electrical support from MECC to address the outage at the Unit 10 steam turbine generator at MSPS. PSUF ¶ 36. Prior to Walker and another employee, Zach Howarth, providing shop support at the MSPS, IHI

> (i) developed the LOTO (Lockout/Tagout) record by identifying and verifying the appropriate LOTO boundaries around the work area; and (ii) isolated the unit 10 equipment, by, among other things, confirming that all isolations were in place, the equipment was deenergized, depressurized and safe for work, and applying the grounds.

8

Id. ¶ 38.[11]  National Grid applied grounds for Unit 10 two days before Walker's arrival.  Id. ¶ 39.  Walker and Howarth began work on April 18, 2022.  Id. ¶ 40.  Two days after, National Grid removed the grounds for Unit 10 at IHI's direction.  Id. ¶ 41. Later that day, IHI performed megger testing[12] on Unit 10 and engaged in further troubleshooting because of low readings.  Id. ¶ 42.

Because of the low readings, someone from IHI instructed IHI's electricians to install local uncontrolled grounds at the generator neutral disconnect.  Id. ¶ 43.  IHI ultimately decided to permanently remove the grounds applied at MSPS from IHI's LOTO. Id. ¶ 44.  IHI installed the grounding cable to the transformer neutral busbar that IHI employees believed was an equivalent ground.  Id. ¶ 46.  Due to continued low readings, IHI re-installed

---

[11] "Proper lockout/tagout (LOTO) practices and procedures safeguard workers from hazardous energy releases."  Control of Hazardous Energy (Lockout/Tagout), Occupational Safety and Health Administration, https://www.osha.gov/control-hazardous-energy (last visited July 9, 2024).  A "ground" is "an object (such as one made of wire or metal) that makes an electrical connection with the earth."  Ground, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ground (last visited July 25, 2024).

[12] "The process of meggering a generator requires grounds to be off the circuit, and as part of that – So the LOTO process allows modification of a LOTO boundary to allow for testing of many different types of testing, one is meggering, during which . . . physical work on the components is not intended to be completed."  PXP, IHI 30(b)(6) Dep. (Nov. 22, 2023) 29-30, ECF No. 36-6.

9

the local uncontrolled grounds at the generator neutral disconnect. Id. ¶ 50. Consequently, while troubleshooting, Walker received an electrical shock while removing bolts. Id. ¶¶ 51-52. This happened because the busbar connected to the Unit 10 generator circuit became live with electricity because IHI employees improperly grounded the busbar circuitry to the grounding grid or cable. Id. ¶¶ 56-57.

IHI investigated the incident in response to Walker's injuries. See PXH, IPSC Incident Investigation MSPS – Contractor Electrical Shock (Apr. 21, 2022) ("Incident Report"), ECF No. 34-9. IHI then issued an incident investigation report identifying two causes of the incident:

> Root Cause: The proper Lockout/Tagout process was not followed. The LOTO was taken into "Test" mode and after megger testing was completed, Lockout/Tagout was not returned to original configuration utilizing grounds in Franklin substation.

> Direct Cause (if applicable): Local grounds were hung on transformer neutral busbar instead of equipment grounding cable. Transformer neutral busbar is not equivalent to ground.

Id. at 7; see PSUF ¶¶ 57, 59. As already noted, IHI admitted responsibility for failing to conduct the appropriate grounding on the Unit 10 turbine. PSUF ¶ 55; see id. ¶¶ 61, 63-64.

## II.  STANDARD OF REVIEW

The Court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A factual dispute precludes summary judgment if it is both "genuine" and "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder "could resolve the point in favor of the nonmoving party." Finamore v. Miglionico, 15 F.4th 52, 58 (1st Cir. 2021) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). A fact is "material" when it might affect the outcome of the suit under the applicable law. Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp., 477 U.S. at 323-24. The Court must view the entire record in the light most favorable to the non-moving party and "indulg[e] all reasonable inferences in that party's favor." Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005) (quoting Euromodas,Inc. v. Zanella, Ltd., 368 F.3d 11, 17 (1st Cir. 2004)). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Id.

11

### III.   DISCUSSION

IHI moves for declaratory relief concerning whether Old Republic owes it a duty to defend in the <u>Walker</u> Litigation.   IHI Mem. Law Supp. Mot. Partial Summ. J. ("IHI Mem.") 9-17, ECF No. 28.   It argues that Endorsement B is the relevant policy and that it is entitled to coverage thereunder.   <u>Id.</u> at 12-13; IHI Reply Mem. Supp. Mot. Partial Summ. J. ("IHI Old Rep. Reply") 2-4, ECF No. 40.   Alternatively, even under Endorsement A, according to IHI, it is entitled to coverage.   IHI Mem. 10-11, 13-17; IHI Old Rep. Reply 4-8.   In response, Old Republic argues that Endorsement A applies – not Endorsement B - and that it owes no duty to defend because there are no allegations or facts to suggest MECC or its agents are at fault for Walker's injuries, a requirement to trigger coverage under the additional insured policy.   <u>See</u> Old Republic Mem. Supp. Obj. IHI Mot. Partial Summ. J. ("Old Rep. Mem.") 8-14, 15-21, ECF No. 34-1.   Then, IHI argues that Old Republic and SRCS America owe it a duty to indemnify.   IHI Mem. 17-19; Reply Mem. Supp. Mot. ("IHI SRCS Am. Reply") 1-4, ECF No. 41.   Both Old Republic and SRCS America contend that it is premature to determine whether they owe a duty to indemnify.   Old Rep. Mem. 15; SRCS America's Opp'n IHI's Mot. Partial Summ. J. ("SRCS Am. Mem.") 2, ECF No. 37.   The parties agree that Nebraska law applies.   IHI Mem. 7; Old. Rep. Mem. 7-8; SRCS Am. Mem. 2.   The Court addresses each argument, but in reverse order.

**A. Choice of Law**

This Court, as one sitting in diversity, must apply the choice-of-law rules of the forum state.[13]  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  The parties agree that Nebraska law applies because that is the state where Old Republic issued its policy.  IHI Mem. 7; Old Rep. Mem. 7-8; SRCS Am. Mem. 2.  Accordingly, the Court accepts the "parties' reasonable agreement."  Artuso v. Vertex Pharms., Inc., 637 F.3d 1, 5 (1st Cir. 2011).

If the Court cannot discern any controlling Nebraska authority on a certain point, it must make an informed guess as to how Nebraska's highest court would resolve the issue.  See Sanders v. Phoenix Ins. Co., 843 F.3d 37, 42 (1st Cir. 2016).  That "prediction may be guided, inter alia, by persuasive case law from other jurisdictions and relevant public policy considerations." Id. (quotation marks omitted).

**B. Declaratory Judgment**

IHI maintains that Old Republic owes it a duty to indemnify.

---

[13] Rhode Island applies the "interest-weighing" test, which requires the Court to "determine which state 'bears the most significant relationship to the event and the parties.'"  Goei v. CBIZ, Inc., 505 F. Supp. 3d 84, 89 (D.R.I. 2020) (quoting Taylor v. Mass. Flora Realty Inc., 840 A.2d 1126, 1128 (R.I. 2004)); see Com. Park Realty, LLC v. HR2-A Corp., 253 A.3d 1258, 1270-71 (R.I. 2021) (noting how Rhode Island adopted Restatement (Second) Conflict of Laws §§ 187-88 (1971)).

IHI Mem. 17.  It also maintains that MECC's excess insurer, SRCS America, also has a duty to indemnify for what is not covered by Old Republic.  Id. at 18-19; IHI Old Rep. Reply 1-2.  Both Old Republic and SRCS America assert that it is premature to decide whether a duty to indemnify exists because there has not been a settlement or judgment in the Walker Litigation, and therefore such a duty could not have arisen yet.  Old Rep. Mem. 15; SRCS Am. Mem. 7-9.  Nor does the policy language obligate Old Republic or SRCS America to indemnify IHI before a liability determination. Old. Rep. Mem. 15.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting Pub. Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)).  It permits federal courts to award declaratory relief when an actual case or controversy is present.  See Verizon New England, Inc. v. Int'l Brotherhood of Elec. Workers, Local No. 2322, 651 F.3d 176, 187 (1st Cir. 2011) ("Requests for a declaratory judgment may not be granted unless they arise in a context of a controversy 'ripe' for judicial resolution."); Abbot Labs. v. Gardner, 387 U.S. 136, 148-49, (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977).  Ultimately, it falls within the Court's discretion to award declaratory relief.  Int'l Game Tech. PLC v.

14

Garland, 628 F. Supp. 3d 393, 403-04 (D.R.I. 2022).

Under Nebraska law, an insurer only has a duty to indemnify if it becomes legally liable to pay damages for a covered insured. Federated Serv. Ins. Co. v. All. Constr., LLC, 805 N.W.2d 468, 474-75 (Neb. 2011); Allstate Ins. Co. v. Novak, 313 N.W.2d 636, 639 (Neb. 1981). Such an event would not occur until there is a settlement or a judgment. Dutton-Lainson Co. v. Cont'l Ins. Co., 716 N.W.2d 87, 100 (Neb. 2006); Union Ins. Co. v. Land & Sky, Inc., 529 N.W.2d 773, 778 (Neb. 1995). Thus, a declaratory judgment concerning indemnification is not ripe for consideration where the underlying action has yet to determine liability, resolve factual disputes, or apportion damages. See Cont'l Cas. Co. v. Greater Omaha Packing Co., Inc., No. 8:14-CV-194, 2015 WL 3852772, at *7 (D. Neb. June 22, 2015); Dutton-Lainson, 716 N.W.2d at 100; Allstate, 313 N.W.2d at 639; see also Atain Specialty Ins. Co. v. Old River Rd. Dev., LLC, No. 1:22-cv-00380-MSM-LDA, 2023 WL 6276569, at *5 (D.R.I. Sept. 22, 2023) (concluding that it would be "premature" to decide whether there is a duty to indemnify when the underlying state action is still ongoing).

The Walker Litigation is ongoing as the parties are still in discovery. See Text Order, Walker v. IHI Power Services Corp., No. 1:23-cv-00057 WES (D.R.I. Apr. 23, 2024). The possibility of a judgment is months, perhaps years, away. Because a duty to indemnify requires an obligation to pay, and such an obligation

15

has yet to materialize in the Walker Litigation, IHI's request for a declaratory judgment on Old Republic's and SRCS America's duty to indemnify is premature. Nor does IHI argue that the relevant policy language creates a duty to indemnify before a finding of liability in the underlying action. Accordingly, IHI's Motion is denied with respect to Old Republic's and SRCS America's purported duty to indemnify.

## C. Whether Old Republic Has a Duty to Defend

The Court interprets an insurance agreement like any other contract, by "giv[ing] effect to the parties' intention at the time the contract was made." Werner Enters., Inc. v. SMC Transp., LLC, 8:20CV164, 2022 WL 952816, at *4 (D. Neb. Mar. 30, 2022) (citing Kast v. Am.-Amicable Life Ins. Co., 559 N.W.2d 460, 463 (Neb. 1997)). "When the terms of an insurance contract are clear, we give them their plain and ordinary meaning as a reasonable person in the insured's position would understand them." Federated Serv., 805 N.W.2d at 474. Such contracts must be construed as a whole, requiring the Court to give effect to every part. Reisig v. Allstate Ins. Co., 645 N.W.2d 544, 550 (Neb. 2002). If any part of an insurance contract is ambiguous – meaning a term could be "susceptible of, at least two reasonable but conflicting interpretations" – then the Court must construe the term in favor of the insured. Id.

Coverage under an additional insured policy consists of two

distinct and separate obligations: "the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated to pay because of injury caused to a third party by acts of the insured." Mortg. Express, Inc. v. Tudor Ins. Co., 771 N.W.2d 137, 147 (Neb. 2009). Those two rights function as contractual duties, not ones imposed by law. Id. Thus, the duties are only as broad as the policy allows. Federated Serv., 805 N.W.2d at 474; Mortg. Express, 771 N.W.2d at 147. Still, an insurer's duty to defend is broader than the duty to indemnify. Federated Serv., 805 N.W.2d at 475.

An insurer's duty to defend is measured against the allegations made in the underlying complaint. Mortg. Express, 771 N.W.2d at 147. The insurer must not only look at the complaint's allegations, but also "investigate and ascertain the relevant facts from all available sources" to determine whether the insurer is obligated to pay. Id. Thus, an insurer has a duty to defend if "(1) the allegations of the complaint, if true, would obligate the insurer to indemnify, or (2) a reasonable investigation of the actual facts by the insurer would or does disclose facts that would obligate the insurer to indemnify." Id.

On one hand, an insurer will defend "whenever it ascertains facts that give rise to the potential of liability under the policy." Federated Serv., 805 N.W.2d at 475. On the other, "an

17

insurer is not bound to defend a suit if the pleadings and facts ascertained by the insurer show the insurer has no potential liability." Id. Thus, when considering a motion for a declaratory judgment, the Court must "consider any relevant evidence outside the pleadings." Id.

1. Whether Endorsement A, Enforcement B, or Both Apply to IHI

To answer whether Old Republic has a duty to defend IHI in the Walker Litigation, the Court must determine which policy language applies. IHI argues that both Endorsements apply. IHI Mem. 10-13. IHI prefers that Endorsement B apply because it appears to provide broader coverage. See id. at 12-13, 16-17; compare Endorsement A with Endorsement B. Alternatively, even if Endorsement B does not apply, IHI claims it is still entitled to a defense under Endorsement A. Id. at 10-11, 13-17.

It is Old Republic's position that only Endorsement A applies. Old Rep. Mem. 8-10. It argues that Endorsement A covers additional insureds who are parties to "construction agreement[s]," and the contract between IHI and MECC was a construction agreement. Id. at 8-9. As part of Old Republic's review process, it did not deny that IHI was an additional insured under the policy with Peter Kiewit. Id. at 9-10. By contrast, Endorsement B could not be the source of coverage because it only applies to parties "for whom no other endorsement on this policy provides additional insured status." Endorsement B. So, because Endorsement A provides

18

additional insured status for IHI, Endorsement B could not apply.

The Court agrees that only Endorsement A applies. Old Republic points to different sources of law defining "construction contract." See Old Rep. Mem. 8-9. But that is not necessary when Endorsement A's "Who Is An Insured" section covers the agreement between IHI and MECC. See Endorsement A(A). It covers parties as additional insureds that have entered agreements with the insured – here, MECC - to "perform[] operations" that require the party to be added as an additional insured, or "[a]ny other [party] [the insured is] required to add as an additional insured under the contract or agreement described in Paragraph 1." Id. An "operation" in this context would include "[o]ne or more acts designed to further a purpose or achieve an effect; a set of activities planned for a specific objective." Operation, Black's Law Dictionary (12th ed. 2024). The plain meaning of "perform[] operations" includes IHI's work on behalf of MECC for "electrical shop support." See Terms and Conditions at 1. Moreover, the agreement between IHI and MECC required MECC to add IHI as an additional insured. Id. at 4. Because IHI "perform[ed] operations" for MECC and the agreement required that IHI be named as an additional insured, Endorsement A is the source of IHI's additional insured status. Given this, Endorsement B cannot apply because it only covers parties "for whom no other endorsement on this policy provides additional insured status." Therefore, IHI

19

is an additional insured under Endorsement A.

2. Whether IHI is Entitled to Coverage Under Endorsement A

Since its first response letter, Old Republic has maintained that it does not have a duty to defend IHI because its liability was not "caused by or arising from MECC's work for IHI." Amundson Ltr. at 1. In other words, IHI only receives coverage as an additional insured if its liability is "caused, in whole or in part, by MECC's acts or omissions, or the acts or omissions of those acting on MECC's behalf." Bengtson Ltr. at 4. Simply put, IHI is not covered unless the underlying injury is at least partially MECC's fault. Here, according to Old Republic, neither the pleadings nor the post-incident investigation reveals any fault by MECC for Walker's injuries. Old Rep. Mem. 15-19; see Bengtson Ltr. at 5.

IHI disagrees. It argues that there is no "fault-based" language in the policy. IHI Mem. 10-11. Coverage does not turn on the finding of negligence or any sort of fault by MECC. Id. Rather, IHI argues that MECC only needs to be the "but for" cause of Walker's injuries, even absent a showing of fault. See id. at 10. Said differently, IHI would receive coverage if Walker's injuries resulted from any aspect of MECC's operations, regardless of how they were caused. Id.

IHI's argument falls short because it fails to read Endorsement A in tandem with the Terms and Conditions to which the

20

parties agreed.  This is required because, under Endorsement A, the additional insured is only afforded insurance as long as it "[w]ill not be broader than that which [MECC is] required by the contract or agreement to provide for such additional insured." Endorsement A at 1.  Then Endorsement A further specifies that it "shall not increase the applicable limits of insurance."  Id. at 2.  Turning to the Terms and Conditions, it specifies that MECC must defend IHI for claims that are "attributable" to injuries "caused by . . . [the] breach, misconduct, or negligence of [MECC]."  Terms and Conditions at 3.  Moreover, the Indemnity section provides that "in no event shall a party have liability or obligation with respect to the acts or omissions of the other party."  Id. at 4.  Accordingly, when one reads Endorsement A with the Terms and Conditions, it becomes clear that the parties intended to limit coverage to instances caused by MECC's negligence.

This intent is further reflected in how the additional insured policy describes what Old Republic will cover – injuries or damages "caused, in whole or in part, by: [MECC's] acts or omissions." Endorsement A at 1.  Many courts have found such language to require a finding that the insured's negligence caused the damage in the underlying suit.  In other words, the insured's negligence proximately caused the underlying damage or injury.  See, e.g., U.S. Specialty Ins. Co. v. Mass. Bay Ins. Co., 21 Civ. 10590 (PAE),

2023 WL 6162409, at *6-7 (S.D.N.Y. Sept. 21, 2023) (finding that the "caused, in whole or in part" by the "acts or omissions" language required a finding that the insured proximately caused the underlying damage); Bacon Constr. Co., Inc. v. Arbella Prot. Ins. Co., Inc., 208 A.3d 595, 600 (R.I. 2019) (concluding the same language required "negligence trigger" by the insured for there to be coverage of the additional insured); see also Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London, Subscribing to Policy Number: ARTE018240, 788 F.3d 375, 380 (4th Cir. 2015); Gilbane Bldg. Co. v. Admiral Ins. Co., 664 F.3d 589, 598 (5th Cir. 2011). The insurance industry specifically adopted this language in additional insured endorsements to avoid coverage where the insured was not at fault. 4 Pt. 2 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law § 11:334 (Aug. 2023 ed.). Given this, interpreting the language to permit coverage under a "but for" causation standard would make the language superfluous. See Burlington Ins. Co. v. NYC Transit Auth., 79 N.E.3d 477, 482 (N.Y. 2017).

Nebraska courts have not had an opportunity to consider the additional insured policy language at issue. IHI cites many out-of-jurisdiction cases to support its position that the relevant language does not require a finding of negligence, just a finding that the insured's operations resulted in the underlying harm. See IHI Mem. 11. The cases to which IHI cites, however, are

distinguishable. For example, IHI relies on PAR Elec. Contractors, Inc. v. BlueLine Rental LLC, No. 2:16-CV-0246-TOR, 2017 WL 374477 (E.D. Wash. Jan. 25, 2017), for the proposition that one should not read similar additional insured policy language as requiring a showing that the insured was negligent. IHI Mem. 11. The court in PAR Electrical Contractors, however, did not consider the same policy language. There, the court drew its conclusion based on the phrase "resulting from acts or omissions." PAR Elec. Contractors, 2017 WL 374477, at *7-8. This language is substantively different from the language used in Endorsement A, as it would not require a finding of fault by the insured, just that its non-negligent operations resulted in the underlying injury. See Burlington Ins. Co., 79 N.E.3d at 482; 4 Bruner & O'Connor § 11:334. Even more, PAR Electrical did not involve a contract between the parties that specifically limited the insured party's duty to defend and indemnify like it does in this case. Compare 2017 WL 374477, at *5, with Terms and Conditions at 3-4. Some of the cases upon which IHI relies suffer from the same defect as PAR Electrical – they neither analyze the same policy language as Endorsement A nor consider the terms of the contracting parties. See IHI Mem. 11 (citing Ryder Truck Rental, Inc. v. Nat'l Fire Ins. Co. of Hartford, 246 F. Supp. 3d 1231, 1238-39 (E.D. Wis. 2017); Great W. Cas. Co. v. Nat'l Cas. Co., 53 F. Supp. 3d 1154, 1172 (D.N.D. 2014)).

IHI does cite two cases that conclude that terms like those employed in Endorsement A do not require a showing of fault.  *See id.* (citing *Arch Specialty Ins. Co. v. Farm Fam. Cas. Ins. Co.*, 238 F. Supp. 3d 604, 613-14 (S.D.N.Y. 2017); *Am. Guar. & Liab. Ins. Co. v. Norfolk Ry. Co.*, 278 F. Supp. 3d 1025, 1041 (E.D. Tenn. 2017)).  The problem with *Arch Specialty*, however, is the court did not analyze an indemnity clause, as here, where the insured's duties turn on a finding of fault.  *Compare* 238 F. Supp. 3d at 607-08, *with* Terms and Conditions at 3-4.  In *American Guarantee*, the court also did not examine similar duty requirements under the contract.  *See* 278 F. Supp. 3d at 1039.  Moreover, the court in *American Guarantee* concluded that the additional insured language required a showing of "cause" for there to be a duty, meaning that "the accident was caused by [the insured's] work, act, or omission in some way, even partially"; not that the incident "was in some way related to the named insured's work."  *Id.* at 1040-41.  Contrary to IHI's position, the *American Guarantee* court denied the additional insured's motion for summary judgment because whether the insured was at fault required a determination by a fact finder.  *Id.* at 1041.  Thus, *American Guarantee* supports Old Republic's position.

In the end, contrary to IHI's position, one cannot interpret Endorsement A as if it fell from a coconut tree - it exists in the context of the parties' agreement and the policy language.

24

Accordingly, coverage turns on whether MECC, as the insured, bears some fault for Walker's injuries, not just whether Walker's injuries resulted from MECC's operations.

3. Whether Old Republic Owes IHI a Duty to Defend Under Endorsement A

Under Nebraska law, a duty to defend arises whenever the insurer "ascertains facts that give rise to the potential of liability under the policy." Federated Serv., 805 N.W.2d at 475. A duty to defend arises either from the factual allegations of a pleading against the insured "or from information derived from other sources including [the insurer's] own investigation." Peterson v. Ohio Cas. Grp., 724 N.W.2d 765, 774 (Neb. 2006). This obligates the Court to not only look at the pleadings, but also "consider any relevant evidence outside the pleadings in resolving the legal issue of whether a duty to defend exists." Id. If neither the pleadings nor the facts show that the insured has potential liability, then the insurer is not bound to defend the suit. Federated Serv., 805 N.W.2d at 475.

The Walker Complaint does not assert any allegations that would suggest that MECC is liable for Walker's injuries. See generally Walker Compl. Even still, IHI points to the fact that Walker, at the time of his injury, was in the course of employment with, and performed work on behalf of, MECC, demonstrating that MECC's "acts" caused Walker's injuries. IHI Mem. 14-15; see DSUF

25

¶¶ 10, 13. That alone, however, does not mean that MECC was at fault for Walker's injuries. At best, the allegations support the proposition that but for MECC's employing and directing Walker to MSPS, he would not have been injured. As explained above, the duty to defend does not arise out of MECC's mere operations.

It should come as no surprise that MECC was not named as a defendant in the Walker Litigation, given that employers benefit from workers compensation immunity which prevents employees from suing in tort for injuries incurred while on the job. See Graham Constr., Inc. v. Markel. Am. Ins., Co., 180 F. Supp. 3d 626, 634-35 & n.10 (D. Neb. 2016) (concerning Nebraska law); R.I. Gen. Laws § 28-29-20 (immunizing employers from suit in Rhode Island). But, even so, courts have found that the complaint must still suggest, "directly or indirectly, negligent conduct (or omission) on the part of the [insured]." AIX Specialty Ins. Co. v. Raincoat Roofing Sys., Inc., 590 F. Supp. 3d 1148, 1155 (N.D. Ill. 2022). Here, other than stating that MECC employed and dispatched Walker to the MSPS, there are no allegations in the Walker Complaint suggesting that MECC caused Walker's injuries. For instance, the allegations do not suggest that MECC had any role in ensuring that the LOTO process was followed or that the proper grounding occurred.

Then, IHI directs the Court to IHI's own pleadings in the Walker Litigation to demonstrate that MECC's acts caused Walker's injuries, triggering coverage. IHI Mem. 14-15. In its Answer, IHI

asserts as an affirmative defense that a third party is responsible for Walker's damages.  IHI Answer at 6; see DSUF ¶ 11.  IHI also alleges in its Third-Party Complaint that MECC failed to adequately train its employees which, consequently, resulted in employees not following its policies and procedures.  IHI TPC ¶¶ 10-25; see DSUF ¶ 12.

IHI's  Answer  and  Third-Party  Complaint  in  the  Walker Litigation also does not trigger coverage.  While under Nebraska law, the Court must look beyond the complaint to determine whether a duty to defend exists, see Peterson, 724 N.W.2d at 774, it may not do so by relying on self-serving pleadings filed by "the putative additional insured seeking coverage," AIX Specialty, 590 F. Supp. 3d at 1153 (citing Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc., 972 F.3d 915, 919 (7th Cir. 2020)).  Put differently, the  party  seeking  additional  insured  benefits  cannot  plead themselves to coverage through conclusory allegations.  Consol. Edison Co. of N.Y., Inc. v. ACE Am. Ins. Co., 673 F. Supp. 3d 475, 490 (S.D.N.Y. 2023).  IHI makes conclusory allegations that MECC did not properly train Walker and his fellow employee, Howarth, which, in turn, caused them not to follow protocol while working at the MSPS on the day of Walker's injury.  See IHI TPC ¶¶ 14-25. It does not allege which of MECC's policies and procedures Walker and Howarth did not follow or how the failure to follow those policies resulted in Walker's injuries.  See id. ¶¶ 17-18, 22, 24.

The same is true about IHI's allegations about Walker's and Howarth's failure to follow the MSPS's LOTO policies and procedures. See id. ¶¶ 19-20, 23, 25. Accordingly, given the conclusory nature of IHI's allegations in its TPC against MECC, the Court finds that IHI's pleadings fail to trigger a duty to defend.[14]

Turning to the evidence, IHI points to two documents – an internal MECC document and an internal email from MECC's Vice President Mike Rinehart – to show that MECC was at fault for Walker's injuries. IHI Mem. 15. The first piece of evidence is an MECC document entitled "Lessons Learned & Continuous Improvement" in which, according to IHI, MECC accepts blame for Walker's injuries by outlining MECC's policy and procedure violations and identifying future improvements. Id.; see DX15, Lessons Learned & Continuous Improvement (Apr. 21, 2022), ECF No. 28-16.[15]

IHI does not explain, however, how the "Lessons Learned"

---

[14] The Court takes no position on whether IHI can trigger a duty to defend if – after the benefit of discovery - it seeks leave to amend its TPC to include well-pled factual allegations.

[15] IHI further asserts that this document supported Old Republic's determination that IHI was not entitled to coverage. IHI Mem. Law Supp. Mot. Partial Summ. J. 15, ECF No. 28. But Old Republic avers that it relied on Exhibit N, a slightly different version of IHI's Exhibit 15. Old Republic Mem. Supp. Obj. IHI Mot. Partial Summ. J. 19 n.5, ECF No. 34-1.

document places blame on MECC.  In fact, the document suggests that IHI is at fault.  As Old Republic points out, page one of the full report states that "[t]he [MSPS's] LOTO process was deviated from by the plant electricians"; and (2) "LOTO was not walked down, lack of voltage was not verified."  PXN, MECC Incident Report 1 (Apr. 21, 2022), ECF No. 34-15.  IHI policies and procedures were in effect at the time of Walker's injuries, and it had ultimate control over the LOTO process.  See supra Part I.B.; PSUF ¶¶ 61-64.  This is confirmed in the document on which IHI relies.  MECC Incident Report at 6.  Because IHI had ultimate control of the MSPS, the "Lessons Learned" document does not, and could not, identify a policy that MECC violated.  See PSUF ¶¶ 61-63; see generally Lessons Learned & Continuous Improvement.  In sum, this document does not support IHI's assertion that MECC was at fault for Walker's injuries.

Turning to the internal email, Rinehart sent that message to all MECC employees and stated, "Mistakes were made.  They were not caught because our client and our team did not follow the processes that exist[] to avoid this."  DX16, Rinehart Email (Apr. 26, 2022), ECF No. 28-17; see PSUF ¶ 74.  But, as Old Republic explains, this was not an email in which MECC accepted blame for the incident. PSUF ¶ 74.  Rather, Rinehart used the email to remind MECC employees to comply with the company's own policies to ensure such violations do not happen on MECC-controlled projects in the future.

Id.; PXO, Rinehart Dep. (Mar. 25, 2024) 173-74, ECF No. 34-16. And Rinehart sent this email to employees who knew nothing about the facts surrounding the Walker incident. PSUF ¶ 74; Rinehart Dep. at 174. In fact, the email explains the company's expectations for employees generally but does not mention anything specific about Walker, not even Walker's name, how he received his injuries, or what policy violations led to his injuries. See generally Rinehart Email. Given the email and Rinehart's testimony, the email does not serve as evidence that MECC accepted fault for Walker's injuries.

In sum, consistent with Nebraska law, the Court reviewed both the relevant policy and the facts surrounding Walker's incident. The Court concludes that IHI has failed to meet its burden in demonstrating that there is no genuine issue of material fact about whether it is entitled to a defense under Endorsement A. As described above, there is nothing in the Walker Litigation pleadings that triggers coverage for IHI. In response to IHI's evidence, Old Republic put forward enough evidence to create a genuine dispute of material fact about whether MECC is at fault for Walker's injuries. See supra Part I.C. For these reasons, the Court denies IHI's Motion with respect to IHI's claim that Old Republic owes it a duty to defend.

IV.    **CONCLUSION**

For the reasons above, IHI's Motion for Partial Summary Judgment, ECF No. 28, is DENIED.

IT IS SO ORDERED.

William E. Smith
District Judge
Date: August 27, 2024